The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 13 |
| STEPHANY YVONNE DIMERY, | ) |
| | ) CASE NO. 11-60142 |
| | ) |
| Debtors. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT FOR PUBLICATION)** |
| | ) |

On March 31, 2011, debtor filed an objection to claim 2-1, filed by Auto Acceptance Corporation. The objection is now before the court.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

### BACKGROUND

Debtor's objection seeks to lower the interest rate on her 2008 Chrysler Sebring from 23.49% to 4.25%. Schedule D lists the vehicle as worth $10,000 and notes that the vehicle has "some damage." According to claim 2-1, the vehicle is subject to a $4,814.96 lien. No response to the objection to claim was filed. However, the court informed debtor's counsel by Email that

the court would not approve an interest rate less than 5.25% unless he provided legal authority to support the lower rate.

On May 5, 2011, debtor filed a memorandum of supplemental authority. The memorandum argues that the 4.25% interest rate is mandated by the "coerced loan approach" approved of by this court in In re Cook, 322 B.R. 336 (Bankr. N.D. Ohio 2005). In the alternative, debtor argues that a rate of 4.25% in mandated by the "formula approach" endorsed by a plurality of the Supreme Court in Till v. SCS Credit Corp., 541 U.S. 465 (2004).

## LAW AND ANALYSIS

Pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii), a secured claimant in a chapter 13 plan is entitled to receive a distribution of property not less than the value of its allowed claim. Courts have universally agreed that the value of a secured creditor's claim includes the right to receive interest because of the time value of money and, in the view of some courts, the risk of nonpayment. See Cook, 322 B.R. at 339. However, at least prior to Till, the method for calculating the rate of interest to which a secured creditor is entitled (often called the "cramdown" interest rate) was more controversial.

Prior to Till, the circuit courts fashioned divergent approaches to calculating cramdown interest rates, including the "coerced loan," "presumptive contract rate" and "cost of funds" approaches. Till, 541 U.S. at 477. The Sixth Circuit Court of Appeals endorsed the coerced loan approach. Under the coerced loan approach,

> in the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region. Bankruptcy courts are generally familiar with the current conventional rates on various types of consumer loans. And where parties dispute the question, proof can easily be adduced.

In re Kidd, 315 F.3d 671, 675 (6th Cir. 2003) (internal citation omitted). Thus, in the case of a vehicle, the cramdown interest rate would be the local market rate available on a vehicle of the same year to a good-credit customer. See Id. at 677.

In Till, a four-Justice plurality of the Supreme Court endorsed the so-called "formula approach." Under the formula approach, a court must take the national prime rate and add a risk-adjustment factor. Till, 541 U.S. at 478–80. The court did not decide the method for determining the risk adjustment fact but noted with approval that courts typically apply upward adjustments of 1% to 3%. Id. at 480. The plurality selected the formula approach over competing approaches because it "entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings." Id. at 479.

Justice Thomas filed a concurring opinion in which he opined that a creditor is entitled to

2

an interest rate reflecting no risk whatsoever. Id. at 489. He reasoned that the text of section 1325(a)(5)(B)(ii) requires a only a valuation of the *property* to be distributed, not the value of the debtor's *promise* to pay. Id. at 485–86. Justice Thomas concurred only because the debtor, by offering more than the prime rate, was paying more than required. Id. at 491.

This court decided Cook in the immediate aftermath of Till. In Cook, the debtor's assets exceeded his liabilities. Cook, 322 B.R. at 338. The legal issue was the rate of interest that should be paid to *unsecured* creditors. Id. Thus, Cook called on the court to interpret section 1325(a)(4) as opposed to section 1325(a)(5)(B)(ii). Id. at 340. However, because both subsections contain the same operative language entitling creditors to at least "the value, as of the effective date of the plan, of property to be distributed under the plan," the same method for determination of a cramdown interest rate must apply in both cases. Id. at 344–45.

In Cook, this court considered whether Till was precedential. This court observed that when the Supreme Court issues a fractured opinion, the "narrowest grounds" approach determines the degree to which the holding is precedential. "When a fragmented Court decides a case and no single rational explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Cook, 322 B.R. at 341 (citing Marks v. United States, 430 U.S. 188, 193 (1977)) (internal quotes omitted). The court concluded that the reasoning of the plurality opinion and Justice Thomas's concurrence contained no common ground. This is underscored by the explicit rejection of Justice Thomas's approach in the text of the plurality opinion. Id. at 343. Therefore, the court looked to Sixth Circuit precedent and applied the coerced loan approach to determine the applicable interest rate. Id. at 345.

Since Cook was decided, the Sixth Circuit Court of Appeals has indicated in dicta that bankruptcy courts should follow Till when determining interest rates in chapter 13 plans. Bank of Montreal v. Official Comm. of Unsecured Creditors (In re Am. Homepatient, Inc.), 420 F.3d 559, 566–68 (6th Cir. 2005). In American Homepatient, the court considered the applicability of the formula approach to cramdown interest rates in Chapter 11 bankruptcy. The court concluded that strict application of the formula approach is not appropriate in chapter 11 cramdowns. Id. at 568. However, in dicta, the court stated that Till does require application of the formula approach in the context of chapter 13 plans. Id. 566–68. In addition, the Bankruptcy Appellate Panel for the Sixth Circuit has endorsed the formula approach in the context of section 1325(a)(5). DaimlerChrystler Servs. N. Am. LLC v. Taranto (In re Taranto), 365 B.R. 85, 90 (B.A.P. 6th Cir. 2007).

In a recent unpublished opinion, In re Blanton, 2010 WL 4503188 (Bankr. N.D. Ohio 2010), this court revisited its holding in Cook. Citing Till as authority, the debtors in Blanton were attempting to reduce the interest rate on their vehicle from 23.52% to 5.25%. Blanton at *1. The creditor objected on the basis that the rate should either be the contract rate of 23.52% or a subprime market rate of 15%. Id. at *1–*2.

In Blanton, this court opined that "[w]hat has become obvious since Till was decided is that courts have rushed headlong to embrace it as precedential when it is not based upon traditional American jurisprudence." Id. at *2. However, despite this reservation, the court concluded that the Sixth Circuit would most likely adopt Till if presented directly with the issue given the dicta in American Homepatient. Id. Applying Till, the court began with a prime rate of 3.25% and added a 2% risk factor to arrive at a cramdown interest rate of 5.25%. Id. The court used a 2% interest rate because it was in the middle of the 1% to 3% range suggested in Till. Id.

The prime rate is still 3.25% and the court still believes that a 2% risk factor is reasonable for automobiles, which are depreciating assets. The debtor asserts that the risk factor should be lower for his *particular* car because he states that he has considerable equity. However, the plurality in Till selected the formula approach specifically to avoid this sort of evidentiary inquiry. Till, 541 U.S. at 479. Furthermore, the court has some doubts about the debtor's claim of equity given the disclosure that the vehicle has "some damage."

Accordingly, the debtor's objection to claim is granted, but only to the extent that it seeks to cramdown the interest rate to 5.25%.

An order will issue with this opinion.

\#   \#   \#

Service List:

Stephany Yvonne Dimery
616 Cline Ave
Unit 202
Mansfield, OH 44907

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

Gregory Scott Reichenbach
P.O. Box 256
Bluffton, OH 45817

Credit Acceptance Corp.
25505 W. 12 Mile Rd. Ste 3000
Southfield, MI 48034

4